United States District Court
District of Massachusetts

```
                              )
The D.S. Brown Company,       )
                              )
          Plaintiff,          )
                              )
     v.                       )
                              )          Civil Action Nos.
White-Schiavone, JV, et al.   )          19-30095-NMG
                              )          20-30043-NMG
          Defendants.         )
                              )
                              )
                              )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a public works project whereby the materials supplier, plaintiff The D.S. Brown Company, provided the builder, defendant White-Schiavone, J.V. ("White-Schiavone"), with a certain kind of concrete that purportedly was defective.  Plaintiff brings an assortment of state law claims and a petition for declaratory judgment against White-Schiavone, the general contractor, Huntsman International LLC, the purported concrete manufacturer, and others (collectively "defendants") in this Court based upon diversity jurisdiction under 28 U.S.C. § 1332.

Months after plaintiff brought this suit in federal court ("the First Action"), White-Schiavone filed reciprocal claims against The D.S. Brown Company in Massachusetts Superior Court

relating to the same subject matter ("the Second Action"). Plaintiff subsequently removed the Second Action to the Western Division of this Court, again invoking diversity jurisdiction. That case has since been transferred to this Session.  White-Schiavone v. D.S. Brown Co., C.A. No. 20-30043-NMG (D. Mass., Mar. 9, 2020).

Pending in the First Action are a joint motion to dismiss for failure to state a claim filed by White Schiavone, J.F. White Contracting Co. ("J.F. White") and Schiavone Construction Co., LLC ("Schiavone") (Docket No. 22), a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim filed by Huntsman International LLC (Docket No. 36), in which all other defendants join (Docket No. 43) and a motion to consolidate the two pending cases filed by plaintiff (Docket No. 62).  Pending in the Second Action is White-Schiavone's motion to remand (Docket No. 30). On October 7, 2020, this Court held a hearing in the First Action on defendants' motion to dismiss for lack of subject matter jurisdiction.

For the reasons that follow, the Court will 1) deny defendants' motion to dismiss for lack of subject matter jurisdiction, 2) deny White-Schiavone's motion to remand and 3) allow plaintiff's motion to consolidate.  Having determined that the Court has subject matter jurisdiction over this case,

the Court will address the remaining pending motions in a separate Memorandum and Order.

I.   **Background**

    **A. The Parties and the Facts**

    Plaintiff is a company that designs, manufactures and supplies engineered products for the bridge and highway industries.  It purports to be incorporated in Ohio and to maintain its principal place of business in North Baltimore, Ohio.  It has submitted multiple affidavits and documents to support those contentions.  Defendants rejoin, however, that plaintiff is actually a Delaware corporation with its principal place of business is in Buffalo, New York.  Defendants have submitted their own collection of affidavits and documents to support their contentions.

    Defendant White-Schiavone is a Massachusetts joint venture that was awarded a construction contract by the Massachusetts Department of Transportation ("MassDOT") to replace the bridge decking on the I-91 viaduct in Springfield, Massachusetts ("the Project").  White-Schiavone is comprised of two joint venture partners: 1) J.F. White Contracting Co., a Massachusetts corporation with its principal place of business in Massachusetts and 2) and Schiavone Construction Co., LLC, a limited liability company with its principal place of business in New York.  Defendant Huntsman International LLC is a limited

liability company that manufacturers chemical products and has its principal place of business in Houston, Texas.  None of the defendants purports to be a citizen of Ohio.  They do, however, contend that the sole member of Schiavone is a citizen of New York and the sole member of Huntsman International LLC is a citizen of Delaware.  Plaintiff has not contested the domiciliary of the defendants.

As part of the Project, White-Schiavone executed a materials contract with the plaintiff corporation in or about June, 2015, under which plaintiff agreed to supply White-Schiavone with a certain kind of concrete called "delcrete," among other materials.  The delcrete was used in the installation of expansion joints under the I-91 viaduct bridge deck.  Plaintiff asserts that it did not itself manufacture the delcrete but, instead, purchased it from Huntsman International LLC which shipped it to plaintiff in Ohio in May, July and August, 2017, after which plaintiff forwarded the product to White-Schiavone in Massachusetts.

By mid-2017, White-Schiavone had received shipments of delcrete from plaintiff and began using it to install the expansion joints.  Soon thereafter, however, White-Schiavone reported to MassDOT that the delcrete was causing the expansion joints to fail because it was crumbling, de-bonding and separating from the bridge deck.  It is unclear what caused the

failures.  Plaintiff submits that the failures were caused by
White-Schiavone's storage, handling or installation procedures
or by Huntsman's manufacturing process.

In or about December, 2017, plaintiff began to supply
White-Schiavone with a different batch of delcrete ("delcrete
2") which functioned properly.  MassDOT, in response, directed
White-Schiavone to replace all previously installed expansion
joints with new joints using delcrete 2.  Plaintiff asserts that
White-Schiavone subsequently threatened to file suit against it
for supplying defective delcrete, causing plaintiff to initiate
this action for declaratory judgment.

**B. Jurisdiction**

Plaintiff's principal place of business and state of
incorporation are both disputed in this case.  Plaintiff
maintains that it is both incorporated and has its principal
place of business in Ohio.  Huntsman retorts that plaintiff is
also incorporated in Delaware and all defendants assert that its
principal place of business is in New York.  Both sides have
proffered extrinsic evidence and made oral arguments with
respect to plaintiff's domicile.

**1. State of Incorporation**

To support its contention that it is an Ohio corporation,
plaintiff has provided, <u>inter</u> <u>alia</u>, a declaration from its
accountant, Cynthia Casillo, in which she declares that

- 5 -

> D.S. Brown is an Ohio corporation . . . [that] has
> always filed its taxes in Ohio as an Ohio corporation.

Attached to Ms. Casillo's declaration are various documents

including the company's Articles of Incorporation filed in Ohio

in 2008.

Huntsman bases its disagreement upon, inter alia, an

"Application for Registration of a Foreign For Profit

Corporation" filed by "D.S.B. Operating Corp.," plaintiff's

former name, in Texas in 2008.  The form denotes the company as

a Delaware corporation and uses the Employer Identification

Number ("EIN") that was assigned to, and allegedly is still used

by, the plaintiff with respect to its Texas filings.[1]  Huntsman

asserts that The D.S. Brown Company was never dissolved in

Delaware and, therefore, continues to exist as a Delaware

corporation.  Alternatively, Huntsman contends that the

plaintiff filed this lawsuit within the three-year period during

which a dissolved entity may still sue or be sued.

Plaintiff directly rebuts Huntsman's contention by

providing a document that shows that "The D.S. Brown Company"

was incorporated in Delaware in 2008 but was "Forfeited" on

October 8, 2016.  Furthermore, plaintiff asserts that, although

the two entities have the same name, they are completely

---

[1] The Application also indicates that the entity's principal
office is in North Baltimore, Ohio.

separate corporate entities.  It explains that the corporate plaintiff, formerly known as D.S.B. Operating Corp., purchased the assets of The D.S. Brown Company, Delaware, in a distressed asset sale in 2008.  Plaintiff proffers affidavits to the effect that it did not, in that sale or subsequently, purchase the stock or affiliate with the Delaware entity in any way.

In reply, Huntsman submits, inter alia, the federal docket sheet of a case in which "The D.S. Brown Company," an Ohio corporation, and "The D.S. Brown Company," a Delaware corporation, were both named as defendants and were both represented by the same counsel.

## 2. Principal Place of Business

Plaintiff also submits affidavits and accompanying documentation in support of its position that its principal place of business is in North Baltimore, Ohio.  It provides several affidavits in both actions from its Vice President and General Manager, Scott Jenkins, whose office is located in North Baltimore, Ohio.  In his first affidavit submitted in both the First and Second Actions, Mr. Jenkins attests,

> D.S. Brown's headquarters has been located in North Baltimore, Ohio for the entire time the facts and circumstances described in Plaintiff's complaint took place.  The actual direction, control, and coordination of D.S. Brown is done from North Baltimore, Ohio.

In another affidavit, Mr. Jenkins proclaims that nearly all of his direct reports at The D.S. Brown Company are located in Ohio and work out of Ohio offices.  In a third affidavit, Mr. Jenkins confirms that, from North Baltimore, Ohio, he is

> responsible for the direction, control, and coordination of D.S. Brown's activities, including its profit and loss, sales, operations, finance, legal matters, human resources, and engineering.

In a separate affidavit, Jeffrey Watorek, the Vice President, Treasurer and Secretary of Gibraltar Industries, Inc. ("Gibraltar") and the Treasurer of the plaintiff corporation, confirms as true the statements made by Mr. Jenkins in his affidavits.  Gibraltar is the parent of the plaintiff corporation.

Defendants have provided contradictory public filings in which "The D.S. Brown Company" lists Buffalo, NY as its principal office.  Some of those filings show the names of corporate officers most of whose office locations are listed as Buffalo, New York.  Defendants also note that the affidavits of Mr. Jenkins are written in the present tense and, therefore, disclose nothing about the status of The D.S. Brown Company when it filed the First Action.

In response to defendants' submissions, Mr. Watorek, whose office is in Buffalo, New York, explains first that, as the Treasurer of the parent, Gibraltar, he serves as the Treasurer

of many of the company's North American subsidiaries, one of
which is The D.S. Brown Company, but he is not responsible "for
the operations, activities or business and strategic plans of
D.S. Brown OH."  Second, Mr. Watorek attests that, although The
D.S. Brown Company is required to report certain compliance and
finance information to the Gibraltar officers who are located in
Buffalo, New York, the New York office is merely a mailing
address for The D.S. Brown Company.  He adds that the plaintiff
corporation is a wholly-owned subsidiary of Gibraltar.

## C. Procedural History

The procedural history in this case is convoluted.  It
begins on July 2, 2019, when plaintiff commenced this action in
the Western Division of this Court against White-Schiavone and
Huntsman Corporation (not Huntsman International LLC).  Soon
thereafter, plaintiff filed its First Amended Complaint as of
right, adding J.F. White and Schiavone as defendants.  In
November, 2019, plaintiff was granted leave to file a Second
Amended Complaint ("SAC") to replace Huntsman Corporation with
Huntsman International LLC ("Huntsman"), the proper defendant.
In all three complaints, plaintiff has insisted that federal
diversity jurisdiction is available because the amount in
controversy exceeds $75,000 and complete diversity exists.

Relying on this Court's diversity jurisdiction, plaintiff
alleges eight counts.  Count I seeks a declaratory judgment to

determine the contractual responsibilities of each party in connection with the purportedly defective delcrete.  Counts II through VIII are brought against Huntsman, asserting that it supplied plaintiff with defective delcrete and, as a result, breached its implied warranty of merchantability (II); was grossly negligent (III); breached its contract (IV); was negligent (V); must, under common law indemnification principles, indemnify plaintiff (VI); breached its implied warranty of fitness (VII); and violated M.G.L. c. 93A, §§ 2 and 11 (VIII).

Defendants have filed motions to dismiss the SAC in its entirety.  White-Schiavone and its joint venture partners move to dismiss the SAC for failure to state a claim, whereas Huntsman moves to dismiss the SAC for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim.  White-Schiavone and its partners have joined Huntsman's motion to dismiss.

On the same day Huntsman filed its motion to dismiss, it also filed a complaint in Texas state court against plaintiff, seeking a declaratory judgment in connection with the defective delcrete. See Huntsman International LLC v. D.S. Brown Co., No 19-11-14861 (Co. Ct., Montgomery County, Tex. Nov. 1, 2019).

Soon thereafter, White-Schiavone filed a complaint against The D.S. Brown Company in the Massachusetts Superior Court, see

White-Schiavone, JV v. The D.S. Brown Co., No. 19-3663 (Mass.
Super. Ct., Nov. 21, 2019), alleging breach of contract (Count
I); breach of warranties and guarantees (Count II); contractual
indemnification (Count III); breach of the covenant of good
faith and fair dealing (Count IV) and violation of M.G.L. c. 93A
(Count V).  In response, The D.S. Brown Company removed the case
to the Western Division of this Court and filed a counterclaim
and third-party complaint against White-Schiavone, J.F. White,
Schiavone and Huntsman, asserting the same claims as those in
its complaint in the First Action.

A few weeks after that removal, plaintiff moved to
consolidate the two cases pending in federal court.
Simultaneously, White-Schiavone filed a motion to transfer both
cases to the Eastern Division of the District of Massachusetts.
The motion to transfer was allowed on April 17, 2020, bringing
both cases to this Session of this Court.  A week later, White-
Schiavone filed a motion to remand its case to the Massachusetts
Superior Court, arguing a lack of diversity jurisdiction.

On October 7, 2020, this Court held a hearing on
defendants' motion to dismiss for lack of subject matter
jurisdiction to explore the parties' contentions as to the
domicile of the plaintiff corporation.  Unpersuaded by the
arguments at the hearing, the Court directed the parties to
submit supplemental memoranda in support of their jurisdictional

allegations which have now been received and considered by the Court.

## II.   **Motions to Dismiss for Lack of Subject Matter Jurisdiction and to Remand**

### A. Legal Standard

Federal courts have limited subject matter jurisdiction and must be specifically authorized to decide a case. Gonzalex-Cancel v. Progresista, 696 F.3d 115, 119 (1st Cir. 2012).  A federal court that lacks jurisdiction, therefore, must dismiss the case. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

A party faced with a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or a motion to remand pursuant to 28 U.S.C. § 1447(c) bears the burden of establishing the court's jurisdiction over the case. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); see also 28 U.S.C. § 1446.  If the motion mounts a "sufficiency challenge", the court will assess the sufficiency of the jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the nonmoving party's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  If, however, the motion advances a "factual challenge" by controverting the accuracy, rather than sufficiency, of the alleged jurisdictional facts, the nonmoving party's

"jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations of both parties to resolve the factual disputes. Id.  The court has "broad authority" in conducting the inquiry and can, in its discretion, order discovery, consider extrinsic evidence or hold evidentiary hearings in determining its own jurisdiction. Id. at 363-64.

A party can establish subject matter jurisdiction by establishing federal diversity jurisdiction. See 28 U.S.C. § 1332(a)(1); Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010). Diversity jurisdiction is available in cases arising between citizens of different states in which the amount in controversy exceeds $75,000. § 1332(a)(1).  It "requires complete diversity between the plaintiffs and the defendants in the action" at the time the complaint is filed. Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008) (emphasis in original); Valentin, 254 F.3d at 361.  For purposes of diversity jurisdiction, a corporation is a citizen of every state and foreign state in which it is incorporated and the one state or foreign state in which it maintains its principal place of business. § 1332(c)(1); Hertz Corp., 559 U.S. at 93.

Here, plaintiff submits, and defendants do not contest, that the amount in controversy exceeds $75,000.  The parties do contest, however, whether there is complete diversity.

## 1. State of Incorporation

As it relates to an entity's state of incorporation, the diversity statute provides that a corporation is "a citizen of every State . . . by which it has been incorporated." 28 U.S.C. § 1332(c)(1) (emphasis added).  The statute's use of the word "every" can be read to treat a corporation that is incorporated in more than one state as a citizen of each of those states. See H.R. Rep. No. 112-10 § 102, at 10 (2011) (revising "the wording of paragraph 1332(c)(1) so that a corporation shall be deemed a citizen of 'every state and foreign state by which it has been incorporated,' instead of 'any State . . .'" (emphasis added)); Coal City Cob Co. v. Palm Enterprises, Inc., No. 3:18-cv-0123, 2018 WL 3475594, at *2-3 (N.D. Tex. July 18, 2018) ("a corporation is indeed a citizen of every state in which it is incorporated for purposes of diversity jurisdiction"); see also Seavey v. Boston & Maine R.R., 197 F.2d 485 (1st Cir. 1952).

The statute's use of the present perfect tense "has been" can be read to treat a corporation as a citizen of every state in which it has ever been incorporated.  See Colon v. Ashby, 314 F. Supp. 3d 116, 121 (D.D.C. 2018).  That could include states in which a company's corporate status has since been dissolved, especially when the applicable state law extends the life of a corporation past dissolution for the purpose of prosecuting and defending suits. See id.; Ripalda v. American Operations Corp,

977 F.2d 1464 (D.D.C. 1992) (finding that a Delaware corporation remained a domiciliary there for three years after dissolution because the applicable state law extends the life of Delaware corporations "for the purpose of prosecuting and defending suits" for three years (citing 8 Del. C. § 278)).  Section 278 of the Delaware General Corporation Law does just that.

The current record presents a factual challenge as to plaintiff's state of incorporation, requiring this Court to determine whether plaintiff is a citizen of both Ohio and Delaware for diversity purposes.  Because Huntsman is also a citizen of Delaware, diversity would be destroyed if plaintiff is deemed to have been incorporated there.

Having reviewed all written submissions and the oral record, the Court is convinced, however, that plaintiff is an Ohio corporation and not a Delaware corporation.  First, the Court is satisfied with the proof establishing that plaintiff was incorporated in Ohio by virtue of its Articles of Incorporation.  Second, the Court is persuaded that the entity by the identical name "The D.S. Brown Company" that was incorporated in Delaware has no affiliation with the plaintiff in this case.  Plaintiff bought the assets of the Delaware corporation at a distressed asset sale more than a decade ago and then, confusingly, changed its name to that of the seller.

The documentary evidence submitted by Huntsman does not prove an affiliation between the Delaware and Ohio corporations which was effectively controverted by plaintiff.

Accordingly, the Court will not invoke the legal fiction that would otherwise find the plaintiff incorporated in two states for diversity purposes because it finds that plaintiff is a separate and distinct entity from The D.S. Brown Company, Delaware.  Plaintiff does not, therefore, share a Delaware domicile with Huntsman and diversity is not defeated on that ground.

### 2. Principal place of business

A corporation maintains its principal place of business at its "nerve center," which is the location from which the corporation's "officers direct, control, and coordinate the corporation's activities." Hertz Corp., 559 U.S. at 92–93.  That location will often

> be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings.

Id. at 93.  The nerve center will not necessarily be where "the bulk of the business activities visible to the public" occurs, but rather where the "top officers [who] direct those activities" sit. Id. at 96; see also Harrison v. Granite Bay

Care, Inc., 811 F.3d 36, 41 (1st Cir. 2016) (defining "nerve center" as "the place where the buck stops").

Allegations related to a corporation's nerve center must be supported by "competent proof." Hertz Corp., 559 U.S. at 96-97 Harrison, 811 F.3d at 40-41. Such proof must go beyond mere "run-of-the-mill corporate filings," Harrison, 811 F.3d at 41 (citing Hertz Corp., 559 U.S. at 97) or representations made in "documents filed with a secretary of state that indicate the location of corporate headquarters" because neither are binding on the court. See Transp. & Storage Sol. Inc. v. KLT Indus., Inc., No. 13-cv-40137, 2014 WL 5320174, at *3 (D. Mass. Oct. 17, 2014).

The record in this case raises questions concerning who directs, controls and coordinates plaintiff's corporate activities and where the corporate officers are actually located. See Hertz Corp., 559 U.S. at 92-93. Defendants assert that several officers do so from Buffalo, New York, causing plaintiff to have the same domicile as Schiavone and White-Schiavone and thus defeating diversity jurisdiction. Plaintiff contends, to the contrary, that Scott Jenkins controls the corporation from Ohio, a state in which no other party proclaims to have as its domicile.

The Court finds that plaintiff has its principal place of business in North Baltimore, Ohio because Scott Jenkins, as the

company's Vice President, directs, controls and coordinates the company's activities from that location.  Specifically, from Ohio, he directs, controls and coordinates, the company's

> profit and loss, sales, operations, finance, legal matters, human resources, and engineering.

Although defendants have submitted several public filings that list Buffalo, New York as the principal office of The D.S. Brown Company and the location in which many corporate officers operate, the Court is not dissuaded. See Transp. & Storage Sol., 2014 WL 5320174, at *3 ("[R]epresentations made in annual reports or other documents filed with a secretary of state that indicate the location of a corporate headquarters do not bind a court for purposes of diversity jurisdiction.").  Mr. Watorek, who serves as the Treasurer of both Gibraltar and the plaintiff corporation, has credibly explained in an affidavit that plaintiff reports certain financial and compliance information to Gibraltar officers who are located in Buffalo, New York but that those officers are not responsible "for the operations, activities or business and strategic plans of D.S. Brown OH," a wholly-owned subsidiary.  As far as plaintiff is concerned, the Buffalo, New York office is just a mailing address. See Hertz Corp., 599 U.S. at 97 (noting that the "nerve center" is "more than a mail drop box"); see also Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 61 (1st Cir. 1993) ("[W]here there

is no evidence that the integrity of the corporate form has been violated, the separate corporate identities of a parent and subsidiary should be honored when determining either one's principal place of business.").

Plaintiff has established that it has only an Ohio domicile, rendering it diverse from all of the defendants. Accordingly, the Court has diversity jurisdiction over this case and will deny the motion to dismiss for lack of subject matter jurisdiction filed by defendants in the First Action and the motion to remand filed by White-Schiavone in the Second Action.

## III. **Motion to Consolidate**

### A. Legal Standard

Fed. R. Civ. P. 42(a) provides that that a federal court can consolidate actions if they 1) are before the court, 2) involve a common party and 3) involve a common question of law or fact. Seguro de Servicio de Salud de P.R. v. McAuto Sys. Grp., Inc., 878 F.2d 5, 8 (1st Cir. 1989). When those circumstances exist,

> the trial court has broad discretion in weighing the costs
> and benefits of consolidation to decide whether that
> procedure is appropriate

and should allow it unless the party opposing it can establish "demonstrable prejudice." Id. (internal citations omitted).

Here, consolidation is appropriate because both the First and Second Actions are before this Court (see C.A. Nos. 19-30095-NMG & 20-30043-NMG), they involve the same parties and involve common questions concerning the contractual responsibilities of each party in connection with the purportedly defective delcrete.

### ORDER

In view of the foregoing, the Court rules as follows:

1) Defendants' motion to dismiss for lack of subject matter jurisdiction (part, but not all, of Docket No. 36 in Civil Action No. 19-30095) is **DENIED.**

2) White-Schaivone's motion to remand (Docket No. 30 in Civil Action No. 20-30043) is **DENIED.**

3) The request of White-Schiavone for an Order from this Court requiring The D.S. Brown Company to pay its fees and costs associated with the preparation and filing of its motion (Docket No. 30 in Civil Action No. 20-30043) is treated as a motion and is **DENIED.**

4) The motion of The D.S. Brown Company to consolidate cases (Docket No. 62 in Civil Action No. 19-30095) is **ALLOWED.**

White-Schiavone, JV v. The D.S. Brown Co., C.A. No. 20-30043-NMG, is consolidated for all purposes under the lead caption of The D.S. Brown Company v. White-Schiavone et al., C.A. No. 19-30095-NMG.  All future pleadings and submissions in both cases shall be filed in the first-filed case.

Pursuant to the Order of this Court entered on May 6, 2020 (Docket No. 37 in Civil Action No. 20-30043) and this Order, the date for filing responsive pleadings to the Answer, Counterclaim

and Third-Party Complaint of The D.S. Brown Company (Docket No. 22) is extended until 21 days after the forthcoming ruling of this Court on the remaining pending motions (Docket Nos. 22 and 36 in Civil Action No. 19-30095).


**So ordered.**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge


Dated October 29, 2020.